FILED

2016 Jun-02  AM 11:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| BARRY L. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| GUARDIAN LIFE INSURANCE | ) | |
| COMPANY OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT[1]

COMES NOW the Plaintiff, Barry Smith, and hereby brings this action against

Guardian Life Insurance Company ("Defendant") for violations of the Employee

Retirement Income Security Act of 1974 in relation to an insurance policy issued to

Kabco Builders Inc. under which the decedent, Tyrone Minson, was an insured

participant. In support of the relief requested herein, Plaintiff alleges the following

upon personal knowledge and as to all other matters upon information and belief based

upon, *inter alia*, the investigation made by and through these attorneys:

---

[1]This document has been drafted by counsel for the Plaintiff on Plaintiff's behalf based
on facts presented by Plaintiff but does not support the inference that Plaintiff has the
knowledge necessary to understand the specific legal terminology used herein.
Furthermore, this document is intended to provide notice of the claims supported by
the facts set forth herein. It is not intended to be an exhaustive compilation of all facts or
all legal claims supported by these facts.

## EXECUTIVE SUMMARY[2]

Before Tyrone Minson died at the age of 44 on October 8, 2015, he did what a father is supposed to do for his children – he bought life insurance through his employment with Kabco Builders Inc. to provide for them in the event of his untimely death. Tyrone Minson suffered from Sarcoidosis and the cause of his death was listed as primarily due to pulmonary hemorrhage. To put it bluntly, he was spitting up anywhere between a half cup to a cup of blood at times.

Mr. Minson worked at Kabco for more than a decade. The people, personnel and owners of Kabco have all commented on how hard Mr. Minson worked to provide for his children and how disappointed they are that the Guardian has not paid his life insurance claim. Kabco contracted with Guardian Life Insurance Company to fund Kabco's employee welfare benefit plan, which is governed by ERISA.

Unlike many of the cases in which benefits are provided through a plan, there were not separate insurance policies issued by Guardian for each benefit. Instead, Guardian chose to provide accidental death and dismemberment, optional life, basic life, short term disability and vision insurance through a single insurance policy. That policy, attached hereto as <u>Exhibit A</u> (Bates numbered Guardian 269-417), is identified as Group Policy No. G-00469289 with an issuance date of July 1, 2011. Mr. Minson elected to participate in the voluntary life insurance, short term disability and basic life portions of that policy which was provided through the course of his employment with Kabco.

---

[2] This Executive Summary is drafted by Plaintiff's counsel and its purpose is to provide as a convenience to the Court an overview of the dispute.

Once Mr. Minson began experiencing symptoms from the Sarcoidosis to the point where he could no longer work, his employer supported him in filing a claim for benefits under this group insurance policy. Guardian did not dispute that Mr. Minson was disabled and began paying him short term disability benefits. When Mr. Minson died, Guardian paid his beneficiary (his aunt) for the basic life benefit the amount of that benefit, approximately $15,000. However, when it came to paying the $200,000 additional life insurance amount, Guardian balked.

Because Mr. Minson was disabled and could not work (he had a Social Security disability finding supporting that same analysis), he was out of work for approximately nine months prior to his death. Guardian was aware of this because they were getting copies of his information and paying him disability benefits. However, the fact that Mr. Minson was not actively working did not mean his coverage under the Plan and the policy in question lapsed. This policy, like most group policies, contains a "waiver of premium benefit" which means he did not have to pay premiums if he was disabled. There is no dispute that Guardian knew Mr. Minson was disabled. No dispute that Guardian paid the basic life benefit some nine months after he stopped working at Kabco (as the waiver of premium kept that basic life benefit in place). There is no dispute that Mr. Minson was entitled to short term disability benefits (Kabco did not have a long term disability benefit). So, the Court may be asking what is the dispute? The answer is there is not a real dispute. The reason this case is being brought is because ERISA applies to this claim.

ERISA, enacted by a Republican congress and signed into law by a Republican president (President Ford on September 2, 1974), was originally designed to protect the American worker. Somehow, the law has been tortured to point where there are no punitive damages, not much in the way of damages beyond the amount of benefit at issue and, thus, no real economic incentive to pay these claims.

Before he died, Mr. Minson did what he was supposed to as a father and provider, he named his brother-in-law as the beneficiary of his supplemental life insurance benefit to provide for the future of his children. Guardian has not done what it was supposed to do in providing that supplemental life benefit. During the administrative remedies process, every document received by Plaintiff's counsel was Bates numbered, returned to Guardian for confirmation and every communication with Guardian was done so in writing.

The administrative remedies process was documented fully by Plaintiff's counsel and all the documents (that are the beginning point of the ERISA record) are contained within the submission being filed by Plaintiff's counsel who can establish the necessary foundational elements for the documents that he will file to be considered 'evidence' in this matter. Not only does the ERISA record that will be filed by Plaintiff's counsel contain the necessary elements for establishing the foundation for admission of the documents as evidence, but it also has been done in a chronological fashion so that the reader of the filings in this matter will not have to guess what happened when and who did what when during the administrative remedies process.

The administrative remedies process finally came to an end approximately three months ago when Plaintiff's counsel submitted a final letter in which we demanded Guardian make a decision. Consistent with form, Guardian has not made a decision.

It is hard to imagine what the framers of ERISA would have thought of the law that claimants now face. Instead of providing a full judicial review, many ERISA claimants find themselves in federal court standing next to an insurance claims adjuster who insists that his judgment on the merits of the claim trumps the judgment of the federal district court judge cloaked in Article III power. Imagine, if you will, an insurance claims adjuster demanding that a federal judge set aside his judgment on the actual evidence in the case and instead "defer" to the insurance claims adjuster's decisionmaking. It is an incredible thing to think that we have come so far away from the very purpose of ERISA that claimants can no longer find any relief from the claims adjusters' tainted reviews of the claims.

However, there is good news in this case. Because Guardian did not make its decision within the time period allotted under the terms of the "Plan" (as ERISA refers to the insurance policy in question), there is no decision for this Court to "defer to" and, as such, this is a case that demands *de novo* review.

## PARTIES

1.     Plaintiff, Barry L. Smith, is a resident of Marshall County, Alabama.

2.     Plaintiff, Barry L. Smith, is the designated beneficiary of the optional life benefit.

3.     Defendant Guardian Life Insurance Company of America ("Guardian") is the entity that insured the Plan benefit in question.

4.     Guardian denied payment of the benefit as set forth herein.

5.     Guardian is a New York corporation.

6.     Guardian maintains its principal place of business in New York, New York.

7.     Guardian does business in Alabama as evidenced by its issuance of the policy in question.

8.     Guardian's agent for service of process is CSC-Lawyers Incorporating Service, Inc., 150 South Perry Street, Montgomery, Alabama 36104.

## JURISDICTION AND VENUE

9.     Jurisdiction and venue are proper in this district because Tyrone Minson ("Decedent") participated in the ERISA plan provided by his employer within this district.

10.    Jurisdiction and venue are further proper in this district as Guardian issued the insurance policy funding the ERISA benefit in question within this district.

11.    Jurisdiction and venue are also proper in this district where a substantial portion of the events which give rise to the claims asserted herein occurred in this district and does business by agent in this district.

12.    Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C. §1132(e) confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" as that term is defined

within 29 U.S.C. § 1001, et. seq and The Plan "may be found" within this district.

13.     Jurisdiction is appropriate under 28 U.S.C. § 1332(a) in that the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and diversity exists between the parties.

## THE POLICY AT ISSUE

**A.     Guardian Policy**

14.     As part of Decedent's employment with Kabco (which began July 2002), Decedent was offered an optional life benefit through the Kabco Builders Inc. Insurance Plan funded by a policy issued by Guardian.

15.     Decedent selected several different coverages on June 20, 2013, and Guardian issued Decedent these coverages with an effective date of July 1, 2013. Exhibit B.

16.     Decedent was provided with $15,000 of Basic Life Coverage with Accidental Death and Dismemberment (AD&D) coverage, and he listed Betty Watkins (aunt) as the beneficiary.

17.     Decedent also purchased $200,000 of Voluntary Term Life Coverage, and he listed Plaintiff (brother-in-law) as the sole beneficiary.

18.     Decedent also purchased Short Term Disability (STD) coverage.

19.     The life insurance coverages contained waiver of premium clauses if Decedent was "totally disabled."

20.     Total Disability was defined as "due to sickness or injury, you are not able to perform any work for wages or profit; and you are receiving regular doctor's care appropriate to the cause of disability."

21.     The STD policy contained a waiver of premium clause that waived all premiums while Decedent was entitled to receive a weekly benefit payment under the plan.

22.     Disability was defined as an inability to perform the major duties of "your own job" under the STD policy.

**B.     Claims Process**

23.     Decedent required lung surgery on December 16, 2014, due to his advanced lung disease.

24.     Guardian received Decedent's claim for benefits on December 22, 2014.

25.     Guardian paid STD benefits until June 15, 2014 (the maximum allowable period of payments).

26.     Guardian began waiving premiums due under the Policy on December 23, 2014.

27.     Guardian received documents from Decedent's doctors indicating total disability, Decedent's evaluation for a lung transplant, and the need for lung surgery.

28.     Decedent was approved for Social Security benefits beginning May 2015 based on a finding that he was disabled since November 25, 2014.

29.     Decedent died on October 8, 2015.

30.     Guardian's initial denial of Plaintiff's claim for life insurance benefits was on December 4, 2015.

31.     Guardian's stated reason for the denial was based upon 1) Kabco's termination of their group life insurance coverage on June 1, 2015 and 2) Decedent's failure to apply for the extended life benefit or convert his group coverage to an individual policy.

32.     Guardian's letter appears to concede that the triggering of the waiver of premium provision would have avoided any adverse impact from Kabco's termination of group coverage.

33.     Guardian did not explain what proof was required in addition to the proof submitted with Plaintiff's STD claim.

34.     On January 20, 2016, the undersigned counsel sent Guardian a letter requesting an appeal, requesting to submit additional documentation in accordance with ERISA, and seeking any and all "relevant" documents as that term is defined by the Department of Labor's regulations enacted pursuant to ERISA.

35.     Guardian then began a pattern of partially responding to or completely disregarding counsel's requests.

36.     As part of the undersigned counsel's standard business practices, counsel received documents from Guardian, then Bates numbered those documents and returned copies of the newly numbered documents to Guardian for confirmation.

37.     Thus, counsel has preserved what has been produced by Guardian to date and provided a chronological record of the starting point for establishing what constitutes the "ERISA Record" in this matter.

38.     Counsel sent one letter on February 22, 2016, as part of this documentation process.

39.     That letter explained the holes in Guardian's production, repeated Plaintiff's documentation requests and requested additional information.

40.     No additional production was received from Guardian.

41.     This futile back-and-forth ended on March 11, 2016, when counsel sent a letter requesting a ruling on the appeal in order to exhaust administrative remedies.

42.     A declaration from the Plan Sponsor/Plan Administrator, Kabco Builders Inc., was attached to that letter. See Exhibit C, Plan Administrator Declaration, Bates numbered Guardian 429-430 (the declaration includes its own separate exhibits numbered 1 through 3).

43.     Kabco Builders Inc. is the source of the authority as it is the Plan Sponsor and named Plan Administrator of the Kabco Builders Inc. Insurance Benefit Plan.

44.     Kabco's declaration clearly states that in late 2014 and early 2015 "Mr. Minson became severely ill and was no longer able to work." Ex. C, Plan Admin. Decl. at ¶ 4.

45.     Kabco further stated that "at the initial time that Mr. Minson became severely ill and unable to work, Kabco made every effort to provide Mr. Minson with

10

the benefits afforded him under the terms of the Kabco Employee Welfare Benefit Plan." <u>Ex. C</u>, Plan Admin. Decl. at ¶ 5.

46.     "Kabco's efforts included giving information to Mr. Minson so that notice of Mr. Minson's condition could be provided to Guardian Life Insurance Company of America . . . who funded benefits under the Kabco Builders Inc. Employee Welfare Benefit Plan and Guardian acknowledged that notice." <u>Ex. C</u>, Plan Admin. Decl. at ¶ 6.

47.     As Kabco set out in the attached declaration, "under the terms of the Kabco Builders Inc. Employee Welfare Benefit Plan, Mr. Minson was to be provided a waiver of premium benefit." <u>Ex. C</u>, Plan Admin. Decl. at ¶ 9.

48.     As Kabco clearly stated in its declaration, "that [waiver of premium] benefit was to be afforded under the terms of the Kabco Builders Inc. Employee Welfare Benefit Plan by Guardian who funded said benefit." Ex. C, Plan Admin. Decl. at ¶ 10.

49.     As Kabco is the Plan Administrator and has clearly stated that Mr. Minson was disabled and further that this benefit should have been provided, there is no reason for Guardian's denial of the waiver of premium and as a result of that waiver of premium the ensuing supplemental life benefit.

50.     During the administrative review process, it came to light that Guardian had initially received Mr. Minson's claim for benefits under the policy in question but that for some reason Guardian's email system (which indicated that Guardian had sent his claim information to the "waiver of premium benefit department") had not picked up on the waiver of premium benefit and had not processed the same.

51.     During the administrative remedies process, Plaintiff's counsel repeatedly requested that Guardian provide the documentation on how Guardian was (under its own internal guidelines) to manage a claim such as Mr. Minson's which encompassed multiple benefits within the same policy. Guardian refused to provide the information.

52.     Plaintiff's counsel also repeatedly requested that Guardian provide the information from the waiver of premium claim file, a request that Guardian ignored.

53.     Counsel repeatedly pointed out Guardian's violations of the full and fair review requirement, but these observations fell on deaf ears.

54.     As of the date of this Complaint, Guardian has failed to make a decision on the appeal or to respond to counsel's request in any way.

55.     Guardian's refusal to make a ruling or respond in the appropriate timeframe must be treated as a "deemed" or "*de facto*" denial under C.F.R. § 2560.503-1.

56.     Given Guardian's failure to exercise any discretionary authority, *de novo* review is the applicable standard of review.

## COUNT I

### RELIEF UNDER 29 U.S.C. § 1132(a)

57.     Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

58.     The Plan is deemed "employee welfare benefit plan" as that term is defined in 29 U.S.C. § 1001, et. seq.

59.     Plaintiff is a "beneficiary" in the employee welfare benefit as that term is defined under 29 U.S.C. § 1001, et. seq.

60.     Decedent was disabled under the terms of the employee welfare benefit plan.

61.     Defendant's denial of Plaintiff's and Decedent's benefit was not and is not supported by substantial evidence.

62.     Defendant denied the benefit by refusing to provide or discontinuing those benefits.

63.      The decision making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

64.     The decision making process did not provide a reasonable opportunity to Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

65.      The appellate procedures did not provide Plaintiff with a full and fair review.

66.     Defendant's actions were unreasonable and/or arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

67.     Guardian's claims process and claims decisions were tainted by conflict of interest which motivated claims personnel to deny Plaintiff's claim.

68.     As a direct and proximate result of the conduct of Defendant in failing to provide benefits for Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits,

Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan, in an amount equal to 1.5% per month under Ala. Code § 27-1-17(c) for overdue benefit payments, and additional damages to be proven in the trial of this matter.

<u>COUNT II</u>

**BREACH OF FIDUCIARY DUTY**

69.     Plaintiff adopts and incorporates the paragraphs above as though fully set forth herein.

70.     As alleged above, Guardian provided underwriting services for the Plan.

71.     Guardian is a Plan "fiduciary" as that term is defined within 29 U.S.C. § 1002(21).

72.     Guardian is charged with certain duties as a fiduciary of the Plan, to include those duties set forth within 29 U.S.C. §§ 1104 and 1105.

73.     Guardian did not discharge its fiduciary duties with the care, skill, prudence and diligence that a prudent man acting in a like capacity or familiar with such matters would have used as set forth above.

74.     Guardian breached its fiduciary duties as set forth within 29 U.S.C. §§ 1104 and 1105.

75.     Kabco, Decedent's employer and the Plan's sponsor, assisted Decedent's attempts to receive the benefits promised to him, but Guardian still refused to provide the waiver of premium benefit. See <u>Ex. C</u>, Plan Admin. Decl.

76.     Guardian refused to process Decedent's entitlement to a waiver of premium even after Kabco and its insurance agent specifically asked for an explanation of why Guardian had denied Plaintiff's claim and failed to provide the waiver of premium. Ex. C, Plan Admin. Decl.

77.     As a direct and proximate result of Guardian's failure to carry out its duties as a fiduciary of the Plan pursuant to 29 U.S.C. §§ 1104 and 1105, Plaintiff has been damaged by the failure of Guardian to properly process his claim, for Guardian's breach in failing to provide the waiver of premium benefit and as a result requests the Court conform the Plan to such terms as would permit the damage to be minimized, as well as provide additional damages to be proven at the trial of this matter.

## COUNT III

### FAILURE TO PROVIDE DOCUMENTS
### UNDER 29 U.S.C. § 1132(c)

78.     Plaintiff adopts and incorporates the Paragraphs above as though fully set forth herein.

79.     Defendant was requested to provide documents pursuant to 29 C.F.R. 2560.503-1(h)(2)(iii), which form the basis of the Defendant's wrongful termination and/or denial of benefits to Plaintiff. This regulation required that Plaintiff be provided copies of "all documents, records and other information relevant to claimant's claim for benefits."  29 C.F.R. 2560.503-1(m)(8) defines "relevant" as it is used in 29 C.F.R. 2560.503-1(h)(2)(iii), as all documents, records or other information which was "relied upon in the making of the benefit determination" or "was submitted, considered, or

<u>generated</u> in the course of making the benefit determination, without regard to whether such documents, record or other information was relied upon in making the benefit determination", and "demonstrates compliance with the administrative process and safeguards required."

80. Despite requests for such documents, Defendant did not provide the documents as required pursuant to 29 U.S.C. § 1132(c) and 29 C.F.R. 2560.503-1(h)(2)(iii), including their claims procedures which were specifically put before them by Plaintiff as part of his appeal.

81. As an ERISA fiduciary, Defendant was responsible for providing timely, accurate and complete information and documents to Plaintiff.

82. Guardian served as the *de facto* administrator for the Plan given its involvement in the termination of benefits. *See e.g., Rosen v. TRW, Inc.*, 979 F.2d 191, (11th Cir. 1992) ("Some older cases hold that the [insurance] company is not the proper defendant in an ERISA case solely because the Plan instrument designates a plan administrator . . . We disagree with these opinions because they elevate form over substance. If the company is acting as a plan administrator, then it should be held liable for such conduct regardless of a sham designation in the Plan document."); *Hunt v. Hawthorne Assocs., Inc.*, 119 F.3d 888 (11th Cir. 1997) (holding that the company actually administering the claim can be held liable for failing to produce the documents pertaining to the ERISA plan).

83. Guardian employees decide entitlement to benefits under the Plan.

84. Any funds paid on the claim would be paid out of Guardian funds.

85.     As the *de facto* administrator, Guardian should have produced the documents "generated during the course of the claim" pursuant to the Department of Labor Regulations. To find otherwise would result in a ruling holding the employer responsible for producing documents the employer did not possess or control and render the Department of Labor production regulations meaningless.

86.     Pursuant to 29 U.S.C. § 1132(c), Defendant is liable to Plaintiff for an amount up to One Hundred Ten Dollars ($110) per day from thirty days after the first request for the materials.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant him the following relief as appropriate for each requested Count herein:

a.     As a result of the Defendant's breach of its fiduciary duty, the Court conform the Plan terms in such a manner as to minimize the effect of said breach;

b.     Award Plaintiff benefits due and payable under the terms of the life insurance pursuant to 29 U.S.C. § 1132(a)(1);

c.     For the Court to remove Defendant from its fiduciary roles in the administration of the Plan;

d.     For a judgment against Defendant awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorneys' fee as permitted under 29 U.S.C. § 1132(g)(1);

e.      For a judgment against Defendant awarding Plaintiff interest under Ala. Code § 27-1-17(c);

f.      For an order enjoining Defendant from further breaches of fiduciary or co-fiduciary duties, and direct that Defendant exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

g.      For an order finding the Defendant liable for the breaches described herein;

h.      For an order requiring Defendant to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under the Plan(s);

i.      For an order finding Defendant liable for breach of fiduciary duty; and

j.      Such other relief as may be deemed just and proper.

Respectfully submitted,

/s/  *Thomas O. Sinclair*
Thomas O. Sinclair
SINCLAIR LAW FIRM
2100-A SouthBridge Parkway
Suite 336
Birmingham, AL 35209
T:  205.868.0818
F:  205.868.0894
E:  tsinclair@sinclairlawfirm.com

**ATTORNEY FOR PLAINTIFF**

18

**<u>DEFENDANT TO BE SERVICE VIA CERTIFIED MAIL</u>:**

Guardian Life Insurance Company of America
c/o CSC-Lawyers Incorporating Service Inc.
150 South Perry Street
Montgomery, AL 36104